Robert B. DePUGH, Plaintiff,

v.

Dennis SMITH, Sheriff of Monona County, Iowa; Cydney Bartholomew, Deputy Sheriff of Monona County, Iowa; Summer Erlandson, Deputy Sheriff of Monona County, Iowa; John Does One and Two; all in their Official and Personal Capacities, Defendants.

No. C 94–4030.

United States District Court,
N.D. Iowa,
Western Division.

March 22, 1995.

Robert B. DePugh, plaintiff, pro se.

G. Daniel Gildemeister, Gildemeister, Willia & Keane, Sioux City, IA, for defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### TABLE OF CONTENTS

I. *INTRODUCTION AND PROCEDURAL BACKGROUND* ................. 654
II. *STANDARDS FOR SUMMARY JUDGMENT* ........................... 655
III. *FINDINGS OF FACT* ........................................... 657
    A. *Undisputed Facts* ................................................ 657
    B. *Disputed Facts* ................................................. 658
IV. *LEGAL ANALYSIS* .............................................. 658
    A. *The statute of Limitations For § 1983 Claims* ...................... 658
        1. *The Applicable Statute* ....................................... 659
        2. *Accural Of A § 1983 Claim* .................................... 659
    B. *Cognizable Claims Pursuant To § 1983* ............................ 660
        1. *A Brief Overview Of § 1983* .................................... 661
        2. *DePugh's Fourth Amendment Claim* ............................. 661
        3. *DePugh's Fourteenth Amendment Claim* ........................ 664
            a. *Equal protection* .......................................... 664
            b. *Due process* .............................................. 665
    C. *Qualified Immunity* .............................................. 666

1. Analysis of a qualified immunity defense ....................... 667
2. The test for qualified immunity on summary judgment .......... 667
D. Declaratory Judgment ............................................. 668
V. CONCLUSION ................................................. 668

BENNETT, District Judge.

This is a civil rights suit brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 by a *pro se* plaintiff against the Sheriff of Monona County, Iowa, two of his deputies, and two unnamed individuals. This litigation arises from three searches conducted by the defendants in 1990 and 1991 at an old school building owned by the plaintiff in which he resided and out of which he operated a business.

Both plaintiff and defendants moved for summary judgment, and the court originally granted summary judgment in favor of defendants on the ground that plaintiff's suit was barred by the applicable statute of limitations. However, upon plaintiff's motion to alter or amend the judgment on the ground that his complaint was timely filed within two years of accrual of his claims, the court sets aside its previous judgment, and enters this amended and substituted order disposing of the parties' motions for summary judgment. The motions of the parties require the court to consider when plaintiff's claims of unreasonable search and seizure accrued, whether plaintiff has stated a claim upon which relief can be granted, and whether defendants are entitled to summary judgment on the ground that they have qualified immunity to the claims raised herein.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Robert DePugh, a former resident of Soldier, Iowa, and current resident of Independence, Missouri, filed this lawsuit pursuant to 42 U.S.C. § 1983 *pro se* on March 23, 1994. Defendants are Dennis Smith, the Sheriff of Monona County, Iowa, and deputy

sheriffs Cydney Bartholomew, Summer Erlandson, and two "John Doe" defendants. Each of the defendants is sued in both his or her individual and official capacities. DePugh's complaint asserts two causes of action. The first cause of action alleges violation of DePugh's Fourth Amendment rights against unreasonable searches and seizures as the result of three warrantless searches of DePugh's residence and place of business, known as the old Soldier Schoolhouse, in Soldier, Iowa. · The second cause of action alleges violation of DePugh's rights to due process and equal protection under the law.[1] DePugh seeks $10,000 in compensatory damages from each defendant and punitive damages as follows:

(1) $50,000 against Defendant Smith;

(2) $25,000 against Defendant Erlandson;

(3) $25,000 against Defendant Bartholomew;

(4) $10,000 apiece against Defendants John Doe One and John Doe Two.

Additionally, DePugh seeks declaratory relief that defendants violated his rights under the Fourth Amendment by conducting the searches and seizures of which he complained, and that each defendant violated DePugh's rights to due process and equal protection by failing to prevent other defendants from violating DePugh's Fourth Amendment rights. Defendants Smith, Bartholomew, and Erlandson answered the complaint on April 21, 1994.[2]

On August 24, 1994, the defendants moved for summary judgment on both counts of DePugh's complaint. Defendants argued that DePugh's complaint was barred by the applicable two-year statute of limitations for

---

1. This claim is as follows:

    Each defendant individually deprived plaintiff of his constitutional rights of due process and equal protection under the law not only by their own conduct but by failing as law enforcement officers to prevent their fellow offi-

cers from violating plaintiff's Fourth Amendment rights.
Complaint, ¶ 25.

2. The "John Doe" defendants have never been identified or served with original notice in this action.

claims pursuant to § 1983, because it had been filed more than two years after any of the searches of which it complained. Defendants also argued that the complaint failed to state a claim upon which relief can be granted, because defendants conducted the searches of the Schoolhouse upon the consent of a person with appropriate authority over the premises. Finally, defendants asserted that they were entitled to qualified immunity to all of DePugh's claims, because they did not violate any clearly established law by conducting a consensual search of the Schoolhouse.

DePugh resisted the motion for summary judgment on September 26, 1994, and additionally filed a motion for summary judgment in his favor. DePugh argued that his claims did not accrue until he learned of the warrantless searches in January of 1993, or at some time shortly before that date. DePugh also argued that no valid consent had been given to the searches, and that defendants therefore could not escape liability either on the merits of a Fourth Amendment violation or upon the ground of qualified immunity. DePugh argued that the undisputed material facts demonstrated that he was entitled to summary judgment against defendants Smith and Erlandson.

On October 5, 1994, this court granted defendants' motion for summary judgment, and denied DePugh's motion for summary judgment, on the ground that DePugh's complaint was time-barred. On October 17, 1994, DePugh filed a timely motion to alter or amend this judgment on the ground that his pleadings and resistance to the motion for summary judgment adequately alleged and argued that his claims did not accrue until within the two-year period preceding filing of his complaint, and that the court had not adequately addressed those allegations and arguments. Defendants resisted the motion to alter or amend on October 26, 1994.

A motion to alter or amend judgment is brought pursuant to *Fed.R.Civ.P.* 59(e), which states that such a motion must be filed within ten days after the entry of the judgment, but which does not otherwise establish the criteria by which the court is to assess the merits of the motion. However, the Eighth Circuit Court of Appeals has repeatedly held that the trial court's grant or denial of a motion pursuant to *Fed.R.Civ.P.* 59(e) is reviewed on the grounds of abuse of discretion. *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994); *Twin City Constr. Co. of Fargo v. Turtle Mountain Band of Chippewa Indians Through LaFromboise*, 911 F.2d 137, 139 (8th Cir.1990); *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir.), *cert. denied,* 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988); *Roudybush v. Zabel*, 813 F.2d 173, 178 (8th Cir.1987); *Harris v. Arkansas Dep't of Human Servs., Div. of Mental Retardation–Developmental Disabilities Servs.*, 771 F.2d 414, 416–17 (8th Cir.1985). " 'A motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment.' " *Concordia College Corp.*, 999 F.2d at 330 (quoting *Hagerman,* 839 F.2d at 414). Furthermore, the party making the motion cannot "use a Rule 59(e) motion 'to introduce new evidence that could have been adduced during pendency of the summary judgment motion.... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.' " *Id.* (quoting *Hagerman,* 839 F.2d at 414).

The court finds that DePugh is not attempting in the present motion to alter or amend judgment to do any of these forbidden things; rather, he seeks reconsideration of a point previously argued, that his claim did not accrue until less than two years prior to his filing of this lawsuit, and his argument is not based on any offers of new evidence. The court finds further that it did not give due consideration to DePugh's statute of limitations and accrual arguments in its prior disposition of the parties' motions for summary judgment. In order to correct this error, the court grants DePugh's motion to alter or amend judgment to the extent described below, and provides this amended and superseding ruling on disposition of the motions for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic

remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir. 1992).

The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th

Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[3] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The moving party is not required by *Rule 56* to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule 56(c),* its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.*

---

**3.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel,* 953 F.2d at 394.

*R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the parties' motions for summary judgment.

## III. FINDINGS OF FACT

### A. Undisputed Facts

The record reveals that the following facts are undisputed. In 1990 and 1991, DePugh owned a building known as the Soldier, Iowa, Schoolhouse (hereinafter the Schoolhouse) which is located, appropriately enough, in the town of Soldier, Iowa. At that time, DePugh used the building both as his residence and as a business establishment. In addition to DePugh, the only other person in Soldier, Iowa, who had a key to the Schoolhouse was the mayor of Soldier, Iowa, Maynard Swenson (hereinafter Mayor Swenson).

The defendants state that at some time during the summer of 1990 they were informed that two young girls had been seen on the Schoolhouse premises playing with pills of unknown origin. Defendants suspected that the house might contain contraband, but did not obtain a search warrant for the Schoolhouse. Instead, defendant Smith approached Mayor Swenson and asked him to let defendants into the building. On July 27, 1990, Mayor Swenson opened the Schoolhouse to the defendants so that they could search it. During this search, some pills were seized and a number of photographs were taken of the interior of the building, including photographs of various containers that, according to their labels, contained various chemicals. Another search occurred at some time in August of 1990, and a third search occurred in September of 1991. The defendants do not dispute that the searches took place nor do they dispute that they were conducted without first obtaining warrants.

DePugh was subsequently arrested on charges unrelated to the items seized during the searches.[4] On January 4, 1993, while he

---

4. The record does not contain information regarding the basis for the DePugh's arrest. However, there is no dispute that the arrest and

DePugh's subsequent incarceration were unrelated to the information which the defendants re-

was incarcerated pursuant to those unrelated charges, DePugh had a telephone conversation with Mayor Swenson. During that conversation, Mayor Swenson told DePugh about a search of the Schoolhouse. However, in his complaint, DePugh states that he "had learned about it from other sources" prior to Mayor Swenson's telephone call. Complaint, ¶ 21.[5]

On March 23, 1994, two and a half years after the most recent search and seizure (which occurred in September, 1991), and a year and two months after Mayor Swenson confirmed that a warrantless search or searches had, in fact, taken place, DePugh filed this lawsuit.

### B. Disputed Facts

The record does not reveal how defendants gained access to the Schoolhouse on any occasion other than July 27, 1990. The defendants state, in their statement of facts in support of their motion for summary judgment, that "[a]ny searches which took place in 1990 were with the consent of the property caretaker," but they make no such assertion regarding the search in 1991. Defendants have included as part of their statement of facts a written statement from Mayor Swenson stating that in May or June of 1991, he provided defendants with the keys to the Schoolhouse. However, these dates do not match either the dates the parties agree that the searches took place or the dates defendants state that they gained access to the Schoolhouse via Mayor Swenson.

As a further matter, defendant Smith states by affidavit and answers to interrogatories that Mayor Swenson represented himself to be the "caretaker" of the Schoolhouse and that he had provided access to the Schoolhouse to other persons on other occasions. By affidavit attached to DePugh's statement of facts, however, Mayor Swenson denies that he ever made either representation to Smith.

Finally, the record does not reveal how, through whom, or, more importantly, *when*, DePugh first learned of a search or searches of the Schoolhouse prior to his telephone conversation with Mayor Swenson in January of 1993.

### IV. LEGAL ANALYSIS

Both DePugh and the defendants have moved for summary judgment in their favor in this case. DePugh's motion for summary judgment simply asserts that there are no disputes of material fact in this case as to the liability of defendants Smith and Erlandson for the constitutional violations alleged, and that he is therefore entitled to summary judgment as a matter of law. The defendants' motion for summary judgment, however, raises three questions. The first question is whether DePugh filed this action within the applicable statute of limitations period. The second question is whether DePugh has even stated a claim upon which relief can be granted in light of defendants' assertion that all searches were consensual. The final question is whether or not defendants are entitled to qualified immunity because they reasonably believed that the searches were consented to by a person with sufficient authority to give valid consent.

### A. The Statute Of Limitations For § 1983 Claims

Defendants argue that DePugh failed to file his complaint on time, based on the dates of the searches in question and the filing of the complaint more than two years after the last of these searches. DePugh asserts that he filed his complaint only about fourteen months after his claim accrued when he learned of the searches of the Schoolhouse. The court will first consider the statute of limitations applicable to DePugh's claims, then turn to the date upon which those claims accrued, to determine whether either party is entitled to summary judgment on

---

ceived during the warrantless searches and seizures at issue here.

5. Paragraph 21 of the Complaint is as follows: Swenson did not tell plaintiff about this illegal search until fourteen months after plaintiff's arrest and only then after plaintiff had learned about it from other sources.

This paragraph refers only to one illegal search, as do the preceding paragraphs. It is not clear from the complaint when or how DePugh learned of the other two searches.

the question of whether or not DePugh's complaint was timely filed.

### 1. The Applicable Statute

■ Section 1983 contains no statute of limitations, *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985), and no federal statute of limitations governs such actions. *Board of Regents, Univ. of New York v. Tomanio,* 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Carr v. Aubuchon,* 969 F.2d 714, 716 (8th Cir.1992). When such a void in federal statutory law occurs, federal courts have repeatedly "borrowed" the state laws governing an analogous cause of action. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914). Thus, courts have applied the personal injury statute of limitations of the state in which the court sits to constitutional claims brought pursuant to § 1983. *Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia,* 471 U.S. at 280, 105 S.Ct. at 1949; *Penn v. Iowa State Bd. of Regents,* 999 F.2d 305, 307 (8th Cir.1993) (applying Iowa's two-year personal injury statute, citing *Wilson* ); *Davis v. Ross,* 995 F.2d 137, 138 (8th Cir. 1993) *(per curiam )* (applying Iowa's two-year personal injury statute of limitations, citing *Wycoff v. Menke,* 773 F.2d 983, 984 (8th Cir.1985), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986)); *Kaster v. State of Iowa,* 975 F.2d 1381, 1382 (8th Cir.1992) (Iowa's two-year personal injury statute of limitations applies to a § 1983 action); *Carr,* 969 F.2d at 716 (applying Missouri's five-year personal injury statute); *Lown v. Brimeyer,* 956 F.2d 780, 781 (8th Cir.) (Iowa's two-year personal injury statute applies to § 1983 claims, citing *Wycoff* ), *cert. denied,* — U.S. —, 113 S.Ct. 176, 121 L.Ed.2d 122 (1992); *Bridgeman v. Nebraska State Penitentiary,* 849 F.2d 1076, 1077 (8th Cir.1988) (applying Nebraska's four-year personal injury statute to § 1983 claim, thus applying *Wilson* retroactively); *Chandler v. Presiding Judge, Callaway County,* 838 F.2d 977, 978–79 (8th Cir.1988) (applying Missouri's five-year personal injury statute of limitations); *Hughes v. Sheriff of Fall River*

*County Jail,* 814 F.2d 532, 533 (8th Cir.) (applying South Dakota's three-year personal injury statute to § 1983 claim), *appeal dismissed and cert den.,* 484 U.S. 802, 108 S.Ct. 46, 98 L.Ed.2d 10 (1987); *Wycoff,* 773 F.2d at 984.

Thus, in this § 1983 action alleging violation of constitutional rights, this court must apply the personal injury statute of the state of Iowa. The applicable statute of limitations is Iowa Code § 614.1(2). That statute provides, in pertinent part:

**614.1 Period.**

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

\*    \*    \*    \*    \*    \*

2. *Injuries to person or reputation— relative rights—statute penalty.* Those founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years.

Iowa Code § 614.1(2). Thus, DePugh's claim will be time-barred under the applicable statute of limitations, unless the running of that statute was tolled, if his action was brought more than two-years after his cause of action accrued.

### 2. Accrual Of A § 1983 Claim

■ Although courts look to state law to determine the applicable limitations period, federal law governs when a cause of action under § 1983 accrues. *See, e.g., Board of Regents v. Tomanio,* 446 U.S. 478, 484–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980); *Garrell v. Gaylor,* 981 F.2d 254, 257 (5th Cir.1993); *Day v. Moscow,* 955 F.2d 807, 813 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989); *Lavellee v. Listi,* 611 F.2d 1129, 1130 (5th Cir.1980). Under federal law, the statute of limitations does not begin to run until the plaintiff knows or has reason to know of the injury which is the basis of the action. *Garrell,* 981 F.2d at 257 (citing *Lavellee,* 611 F.2d at 1131); *Burrell,* 883 F.2d at 418; *and compare Bressler v. Graco Children's Prod.,*

*Inc.*, 43 F.3d 379 (8th Cir.1994) (under Iowa law, a cause of action accrues when plaintiff knows or should reasonably have discovered the injury and its cause). Furthermore, the running of the statute is not tolled by pursuit of state court remedies on the ground that the federal claim did not accrue until conclusion of the state court actions; rather, the cause of action accrues when the constitutional wrong inflicted by state officials occurs. *Kaster*, 975 F.2d at 1382 (§ 1983 claim accrued at time of search and seizure, not at conclusion of state court proceedings); *see also Davis*, 995 F.2d at 138 (§ 1983 claim accrued at time of alleged assault during arrest, citing *Kaster*). The Eighth Circuit Court of Appeals looks to the face of the complaint to determine when the claims of deprivations of constitutional rights accrued in a § 1983 action. *Penn*, 999 F.2d at 307 (looking to face of complaint to determine when due process and equal protection claims accrued, and finding such claims time-barred).

■ In the present case, the face of the complaint reveals that DePugh did not learn of the searches at the time they occurred, and defendants have offered no evidence to suggest that he did. However, it is unclear precisely when DePugh did learn of these searches. DePugh's complaint states that he knew of the searches prior to his telephone conversation with Mayor Swenson in January of 1993. The critical question is whether he *knew or should reasonably have known* prior to March 23, 1992. This question the record does not answer. Although defendants argue that DePugh should reasonably have known about the searches prior to March of 1992, they offer not a whit of evidence to show that this is the case. On the other hand, DePugh has failed to explain when he received the information about searches at the Schoolhouse, which should reasonably have informed him of his injury, prior to Mayor Swenson's telephone call confirming that a search or searches had indeed occurred. There is thus a genuine issue of material fact as to the date DePugh's claims accrued precluding summary judgment in favor of any party to this action on the ground that DePugh's complaint is or is not time-barred.

## B. Cognizable Claims Pursuant To § 1983

Defendants next assert that they are entitled to summary judgment because DePugh has failed to state a claim pursuant to § 1983 upon which relief can be granted.[6] Analysis

---

**6.** The procedural posture of this motion to dismiss for failure to state a claim upon which relief can be granted is as part of a summary judgment motion. When such a ground for dismissal is offered as part of a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) prior to answering, the issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). The Rule 12(b)(6) provides that

> [e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

*Fed.R.Civ.P.* 12(b)(6). The Eighth Circuit Court of Appeals has long recognized that motions pursuant to *Fed.R.Civ.P.* 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir. 1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston*, 33 F.3d 893 (8th Cir.1994):

> We must construe the allegations in the complaint in the light most favorable to [plaintiff], *see* [*Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n*, 970 F.2d 421, 425 (8th Cir.1992)], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

*Carney*, 33 F.3d at 894; *see also Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir.1994) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986)). Thus, in considering a motion to dismiss under *Rule* 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The *Rule* does not countenance dismissals based on a judge's disbe-

of this contention begins with the question of what remedies 42 U.S.C. § 1983 provides for the violation of constitutional rights.

### 1. A Brief Overview Of § 1983

Title 42 U.S.C. § 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978). However, § 1983 provides no substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). "[O]ne cannot go into court and claim a 'violation of section 1983'—for section 1983 by itself does not protect anyone against anything." *Id.* Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *Maine v. Thiboutot*, 448 U.S. 1, 3, 100 S.Ct. 2502, 2503–04, 65 L.Ed.2d 555 (1980) ("Constitution and laws" means that § 1983 provides reme-

dies for violations of rights created by federal statute, as well as those created by the Constitution). To establish a valid § 1983 claim of violation of federal constitutional rights, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and "that the conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution." *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)).

No party contends that the defendants were not "persons" within the meaning of § 1983, nor does any party contend that the defendants were not acting under color of law. Rather, defendants argue that, because they obtained consent for all searches, there can be no Fourth Amendment or Fourteenth Amendment violation in the circumstances alleged here. However the court finds that the question of whether DePugh has stated a claim upon which relief can be granted cannot be so easily answered.

### 2. DePugh's Fourth Amendment Claim

The Fourth Amendment dictates that

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

lief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under *Rule* 12(b)(6) is warranted. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) ordinarily requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. *Fed.R.Civ.P.* 12(b). However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Fed. R.Civ.P.* 12(b)(6); *see also Osborn v. United*

*States*, 918 F.2d 724, 729 (8th Cir.1990) (distinguishing between standards for dismissal under Rule 12(b)(1) and Rule 12(b)(6), and stating that "Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.]"). Thus, summary judgment standards, not the deferential standards for a 12(b)(6) motion based solely on the pleadings, are applicable where the motion to dismiss for failure to state a claim upon which relief can be granted is brought pursuant to *Fed.R.Civ.P.* 12(b)(6), but is supported by matters beyond the pleadings, and also, as in the present circumstances, when this ground for dismissal is urged in a summary judgment motion pursuant to *Fed.R.Civ.P.* 56. Those standards were presented in some detail above in section II.

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST.AMEND. IV. In relation to the particular area of homes, this one-sentence amendment has been interpreted to say that warrantless searches of homes are, *per se,* unreasonable "unless [they fall] within one of the well-defined exceptions. *Lesher v. Reed,* 12 F.3d 148, 151 (8th Cir.1994) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 474, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971); *United States v. Riedesel,* 987 F.2d 1383, 1388 (8th Cir.1993)).

The defendants claim that their warrantless searches were lawful based on the "well-defined" consent exception, under which the Fourth Amendment is not implicated, because either the affected party or someone with common authority over the property has consented to a search of that property, citing *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). *See also Capraro v. Bunt,* 44 F.3d 690, 691 (8th Cir.1994) (recognizing consent exception to unconstitutionality of warrantless search of plaintiff's home in § 1983 litigation); *United States v. Wright,* 971 F.2d 176, 180 (8th Cir.1992) (search conducted pursuant to valid consent does not violate the Constitution); *United States v. Ramey,* 711 F.2d 104, 107 (8th Cir.1983) ("A search conducted pursuant to a valid consent does not violate the Constitution).'" In *Matlock,* the Supreme Court wrote that

> [c]ommon authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States,* 365 U.S. 610[, 81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California,* 376 U.S. 483[, 84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on *mutual use of the property by persons generally having joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 993 n. 7 (emphasis in the original); *Wright,* 971 F.2d at 180 (valid consent may be given by third party who possessed common authority or sufficient relationship to premises); *United States v. Wade,* 740 F.2d 625, 629 (8th Cir.1984) (valid consent may be given by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected). Furthermore, "[t]here is no Fourth Amendment violation if 'the facts available to the officer' at the time of the search would warrant a reasonable man in the belief that someone with authority over the premises consented to the search." *Iron Wing v. United States,* 34 F.3d 662, 665 (8th Cir.1994) (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990)). To put it another way, "[i]t is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded ... [of] the police officer conducting a search or seizure under one of the exceptions of the warrant requirement ... is not that they always be correct, but that they always be reasonable." *Rodriguez,* 497 U.S. at 186, 110 S.Ct. at 2800; *United States v. Sanchez,* 32 F.3d 1330, 1333 (8th Cir.1994) (*Rodriguez* held that "a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1119, 130 L.Ed.2d 1082 (1995).

In *Iron Wing,* the Eighth Circuit Court of Appeals found that police officers reasonably believed that a woman had authority to give consent to a warrantless search where, even though she had no key to the premises, she told police she was living in the premises, confirmed that statement by her familiarity with the house and the fact that she knew that she had left her bedroom window un-

locked. *Iron Wing,* 34 F.3d at 665. Similarly, in *United States v. Brokaw,* 985 F.2d 951 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 300, 126 L.Ed.2d 249 (1993), the court found that there was reasonable basis for assuming valid consent to search a camper when it was obtained from the resident and owner of a nearby cabin, the cabin owner said that he owned the camper, and that the camper was on his land, and the owner further assumed authority to consent to the search. *Id.* at 954.

■ Based on the foregoing, this Court must determine the validity of a warrantless, alleged consent search by evaluating whether a reasonable man in the defendants' shoes would have believed that Mayor Swenson was someone with the authority over the Schoolhouse sufficient to allow a search of the premises. *See, Iron Wing,* 34 F.3d at 665. In this case, there is no dispute that the three separate searches conducted by the defendants at the Schoolhouse were warrantless. Therefore, they were, *per se,* invalid. *See, Lesher, supra.* There is considerable dispute in the record regarding the applicability of the consent search exception, however. Defendant Smith has asserted that this was a consent search situation. He maintained that Mayor Swenson represented to him that Swenson was the caretaker of the Schoolhouse and that he not only had the authority to let Smith in, but that he had previously let others into the Schoolhouse. *See* Defendant Smith's Answer to Interrogatory No. 3, attached to DePugh's September 26, 1994 Opposition Memorandum.[7]

DePugh, on the other hand, asserted that Mayor Swenson lacked that authority. He submitted Mayor Swenson's August 8, 1994 affidavit, in which Mayor Swenson stated at paragraph (4) that "I deny the statement made by Dennis Smith that I told him I was the caretaker of the building or had the authority to let him into the building," Swenson Affidavit, attached to DePugh's September 26, 1994 opposition memorandum. Swenson's affidavit continues with the statement, at paragraph (5), that Swenson denies

"telling Sheriff Smith that I had let other persons into the building or said that I had authority to do so." *Id.* DePugh claimed that Mayor Swenson was given keys to the Schoolhouse so that he could gain access only (1) to open it in case of fire; or (2) to open it in case of other emergency; or (3) to open it to gain access to the Mayor's boat. Therefore, DePugh asserted that defendants lacked the requisite "mutual use," and "joint access and control" needed "for most purposes" as required by *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7.

The Court finds that there is a genuine issue of material fact—specifically, whether Mayor Swenson represented to the defendants that he was the caretaker of the Schoolhouse and, therefore, that he had the authority to let them enter the building— precluding summary judgment on whether the searches of the Schoolhouse were conducted pursuant to valid consent. Although Mayor Swenson stated in his Affidavit that he never made those representations, the court finds Swenson's disavowals suspect in light of the fact that he nevertheless permitted the officers to enter the Schoolhouse and didn't think to mention this to DePugh until more than a year after the fact. On the other hand, if he never made those representations, the court believes that it is not outside the realm of possibility that the defendants mutually agreed that the best way to justify their warrantless entry was to fabricate Mayor Swenson's statements about being a "caretaker" and then assert a consent defense.

Thus, the current state of the record suggests that the Fourth Amendment issue has snowballed into a liar's contest, which is something the court is unwilling to decide on the basis of this record, but which may properly be decided by the trier of fact. At least as telling as this genuine issue of material fact, is the issue of fact concerning which of the searches Mayor Swenson consented to. The court noted above that the documents submitted by defendants indicate that Swenson consented to only one search of the

---

7. According to Smith's Answer to Interrogatory No. 3, "I was invited into the building by Maynard Swenson who told me that he was the

caretaker. He also told me he had let other people into the building and had the authority to do so."

Schoolhouse, but that the date on which he believes he gave this consent does not match any of the dates of the three searches. The defendants have failed to demonstrate that it is beyond dispute that Mayor Swenson, even if he had sufficient authority, consented to each of the three searches they conducted. Therefore, the defendants are not entitled to summary judgment on the ground that De-Pugh cannot state a claim of unreasonable search and seizure in violation of the Fourth Amendment arising from the warrantless search or searches of the Schoolhouse in Soldier, Iowa.

### 3. DePugh's Fourteenth Amendment Claim

#### a. Equal protection

■ Title 42 U.S.C. § 1983 also provides for vindication of the right to equal protection under the Fourteenth Amendment. *Ricketts v. City of Columbia, Mo.,* 36 F.3d 775, 779 (8th Cir.1994). "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). In order to state an equal protection violation, the plaintiff must generally prove purposeful, invidious, intentional discrimination on the basis of the plaintiff's membership in a suspect class. *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir.1987).

■ Where the plaintiff alleges an equal protection violation, but is not a member of a group afforded heightened scrutiny because of a suspect classification, the plaintiff's claim will be subjected only to a "rational basis" level of scrutiny instead of some heightened level of scrutiny. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (age was not a suspect classification, therefore equal protection claim was subjected only to rational basis scrutiny); *Vance v. Bradley,* 440 U.S. 93, 97–98, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979) (upholding Foreign Service Act's mandatory retirement provisions as rationally related to ensuring "professional competence, as well as mental and physical reliability. ..."); *McCann v. City of Chicago,* 968 F.2d 635, 637 (7th Cir.) (city had rational basis for difference in treatment based on age of police sergeants and patrol officers), *cert. denied,* —— U.S. ——, 113 S.Ct. 495, 121 L.Ed.2d 432 (1992). "In cases where a classification burdens neither a suspect group nor a fundamental interest, 'courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws.'" *Gregory v. Ashcroft,* 501 U.S. 452, 470–71, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991) (quoting *Vance,* 440 U.S. at 97, 99 S.Ct. at 942).

■ Because the Equal Protection Clause requires the government to treat similarly situated people alike, *Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3254, dissimilar treatment of dissimilarly situated persons does not violate equal protection. *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1177, 130 L.Ed.2d 1130 (1995); *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.,* 21 F.3d 237, 242 (8th Cir.1994). Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that he or she was treated differently than others who were similarly situated to him or her. *Klinger,* 31 F.3d at 731 (citing *Samaad v. City of Dallas,* 940 F.2d 925, 940–41 (5th Cir.1991)); *Post v. Harper,* 980 F.2d 491, 495 (8th Cir.1992) ("the essence of equal protection analysis [is that] similarly situated people must receive similar treatment under the law," and finding county employee was not similarly situated to elected public officials, and therefore his equal protection claim failed). Absent a threshold showing that the plaintiff is similarly situated to those who allegedly received more favorable treatment, the plaintiff does not have a viable equal protection claim. *Id.* The similarly situated inquiry focuses on whether the plaintiff is similarly situated to another person or group for purposes of the challenged government action. *Id.; More v. Farrier,* 984 F.2d 269, 271 (8th Cir.), *cert.*

*denied,* —— U.S. ——, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993).

▪ DePugh has failed to meet this threshold requirement. Nowhere does he allege that his treatment was dissimilar to similarly situated persons. Indeed, he neither identified the class to which he purportedly belongs, protected or otherwise, nor identified non-members of this class who were treated more favorably by defendants. Thus, his equal protection claim under the Fourteenth Amendment must fail *ab initio.* Defendants are entitled to summary judgment on DePugh's claim of violation of equal protection rights as the result of the warrantless searches of his home.

#### b. Due process

Due process claims are generally subjected to a two-part analysis: (1) is the asserted interest protected by the due process clause; and (2) if so, what process is due. *Sanders v. Woodruff,* 908 F.2d 310, 312 (8th Cir.1990), *cert. denied sub nom. Herron v. Woodruff,* 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990); *Tyler v. Black,* 811 F.2d 424, 427 (8th Cir.1987), *adopted in relevant part,* 865 F.2d 181 (8th Cir.1987) *(en banc), cert. denied,* 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989). Protectable interests include a plaintiff's property or liberty interests. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985) (The Fourteenth Amendment's Due Process Clause protects life, liberty, and property); *Miller v. Lovell,* 14 F.3d 20, 21 (8th Cir.1994) ("Procedural due process requirements only apply, however, to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property and liberty").

▪ It is apparent from a reading of the complaint as a whole that DePugh asserts a liberty interest founded on the

Fourth Amendment's requirement that citizens be free from unreasonable searches and seizures, and a property interest founded on the same amendment's requirement that citizens not be deprived of property by unreasonable seizure. However, although a state must provide due process before depriving a citizen of property, when predeprivation process is impractical or impossible, the availability of some meaningful post-deprivation remedy satisfies due process. *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). Since predeprivation process is impractical when property is seized as potential criminal evidence, *see Coleman v. Faulkner,* 697 F.2d 1347, 1349 (10th Cir.1982), a state's post-deprivation procedure may satisfy due process in such cases. *See also First Fed. Sav. Bank & Trust v. Ryan,* 927 F.2d 1345, 1358 (6th Cir.1991) (seizure of property without pre-deprivation hearing is permissible only in limited situations including need to secure important governmental interest, need for prompt action, need to maintain state's monopoly of legitimate force), *cert. denied sub nom. First Fed. Sav. Bank & Trust v. Director, Office of Thrift Supervision,* 502 U.S. 864, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991). However, the Sixth Circuit Court of Appeals has held that where there was a warrantless seizure, the resulting deprivation of property created a genuine issue of material fact concerning the plaintiff's claim of a violation of his right to due process, and summary judgment was therefore inappropriate. *Wilson v. City of Zanesville,* 954 F.2d 349, 351 (6th Cir.1992).

▪ Although DePugh's due process claim is inartfully pleaded, the court concludes that the contours of that claim are sufficiently apparent from the complaint as a whole.[8] The court concludes further that

8. *Fed.R.Civ.P.* 8(f) requires that "[a]ll pleadings shall be so construed as to do substantial justice." Pursuant to *Fed.R.Civ.P.* 8(a)(2), pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Some circuit courts of appeals have applied a "heightened scrutiny" standard to § 1983 pleadings in order to effectuate "[t]he

dual policy concerns of protecting state officials from a deluge of frivolous claims and providing state officials with sufficient notice of the claims asserted to enable preparation of responsive pleadings." *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The Third Circuit Court of Appeals

there are genuine issues of material fact arising from the warrantless search and seizure that also generate genuine issues of fact concerning the alleged violation of DePugh's due process rights. These issues involve the application and adequacy of either the pre- or post-deprivation safeguards to which DePugh was entitled. Summary judgment is therefore not appropriate on the ground that DePugh has failed to plead a due process claim.

### C. Qualified Immunity

The defendants next argue for summary judgment on the basis that they are shielded from § 1983 liability because they are entitled to qualified immunity. The standard for qualified immunity is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bills v. Dahm*, 32 F.3d 333, 334 (8th Cir.1994); *Givens v. Jones*, 900 F.2d 1229, 1231–32 (8th Cir.1990) (quoting

*Harlow*); *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989) ("A law enforcement officer is shielded by qualified immunity from civil liability if the officer '[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

"[T]o be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bills*, 32 F.3d at 335; *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir.1989); *See also Anderson v. Creighton*, 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). The shield of qualified immunity is breached if "the unlawfulness of the action [is] apparent in light of pre-existing law." *Bills*, 32 F.3d at 335. However, the Supreme Court has made clear that a plaintiff cannot defeat an official's claim of qualified immunity " 'simply by alleging violation of extremely abstract rights.'" *Bills*, 32 F.3d at 335 (quoting *Anderson*, 483 U.S. at 639, 107 S.Ct.

found that " 'the crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer.'" *Colburn*, 838 F.2d at 666 (quoting *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d Cir.1986); *accord District Council 47, Am. Fed. of State, County and Municipal Employees v. Bradley*, 795 F.2d 310, 313 (3d Cir.1986)).

However, the general rule is that a *pro se* complaint must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*); *Smith v. St. Bernards Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir.1994) (citing *Haines*); *United States v. Woodall*, 12 F.3d 791, 794 n. 1 (8th Cir.1993) ("[plaintiff's] *pro se* pleading should be liberally construed as seeking to invoke the proper remedy," citing *Haines*); *Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir.1990) (citing *Haines* and *Taylor v. Gibson*, 529 F.2d 709, 713–14 (5th Cir.1976) (section 1983 action)); *Wallace v. Lockhart*, 701 F.2d 719, 727 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983). This liberal construction rule allows courts to reach the merits of issues suggested by inartful pleadings. *See Green v. Norris*, 12 F.3d 821, 823 (8th Cir.1993) (magistrate judge and state appellate court properly reached the merits of inartfully

pleaded *pro se* claim of ineffective assistance of counsel), *cert. denied*, —— U.S. ——, 115 S.Ct. 212, 130 L.Ed.2d 141 (1994). The Eighth Circuit Court of Appeals has used this liberal construction rule to prevent hypertechnical attacks on *pro se* pleadings. *See, e.g., Vick v. Lockhart*, 952 F.2d 999, 1002 (8th Cir.1991) (appellate court reminded counsel for state of this liberal construction rule for *pro se* pleadings at oral arguments on an inmate's *habeas corpus* petition, prompting the state to concede that the inmate's *Doyle* claim, characterized in the pleadings as "prosecutorial misconduct," was nonetheless properly before the court).

However, the liberal construction afforded *pro se* pleadings is limited by reasonableness: defendants must be given fair notice of the claims so that they may make a meaningful response to the pleadings. *Miles v. ERTL Co.*, 722 F.2d 434, 434–35 (8th Cir.1983) (*per curiam*). The court finds that paragraph 21 of the Complaint makes plain that DePugh is attempting to assert a Fourteenth Amendment claim of violation of due process and equal protection, and it takes little further effort to discover the factual basis for such a claim by perusal of the remainder of the complaint. Thus, the court concludes that defendants have adequate notice of the due process and equal protection claims to make a meaningful response and to prepare a defense for trial.

at 3039); *Givens*, 900 F.2d at 1232 (quoting *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039).

### 1. Analysis of a qualified immunity defense

■ Ordinarily, the court must make a three-part inquiry to determine whether the defendant is entitled to qualified immunity: First, it must determine whether the prisoner has asserted a violation of a constitutional right; second, whether the allegedly violated constitutional right was clearly established; and third, if, given the facts of the case, a reasonable official would have known that the alleged actions violated the right. *Foulks v. Cole County, Mo.*, 991 F.2d 454 (8th Cir. 1993); *Cross v. City of Des Moines*, 965 F.2d 629, 631–32 (8th Cir.1992). *See also Loggins v. Delo*, 999 F.2d 364, 366 (8th Cir.1993) (first step in qualified immunity analysis was determination of whether conduct violated any clearly established right). The conduct of a reasonable official is measured by what " '[a] reasonably competent official should know.' " *Walters v. Grossheim*, 990 F.2d 381, 384 (8th Cir.1993) (quoting *Slone v. Herman*, 983 F.2d 107, 111 (8th Cir.1993), and denying qualified immunity because a reasonably competent official should know that unless a judgment has been stayed it must be obeyed). Good faith is not an element of the defense, nor relevant to the qualified immunity inquiry, because "the standard is one of 'objective reasonableness.' " *Slone*, 983 F.2d at 110 (quoting *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir.1991), in turn quoting *Malley v. Briggs*, 475 U.S. 335, 344, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986)).

The Seventh Circuit Court of Appeals has held further that the test of qualified immunity

> is not whether the conduct is clearly constitutional, but whether it is clearly unconstitutional. [Plaintiff's] proposed test would focus on whether courts have specifically sanctioned particular conduct, whereas the correct inquiry is whether courts have found the conduct unconstitutional or have defined a constitutional right in such a way that " 'a reasonable official would understand that what he is doing violates that right.' " *McDonald v. Haskins*, 966

F.2d 292, 293 (7th Cir.1992) (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).... Application of this test "does not require a prior case that is 'precisely on all fours on the facts and law.' " *McDonald*, 966 F.2d at 293.... Rather, we are concerned with whether the law was clear "in relation to the specific facts confronting the public official[s] when [they] acted." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *see also McDonald*, 966 F.2d at 294.

*Knox v. McGinnis*, 998 F.2d 1405, 1409–10 (7th Cir.1993) (some internal citations omitted). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038. The immunity defense should fail if the official violates a clearly established right, because "a reasonably competent public official should know the law governing his conduct." *Slone*, 983 F.2d at 109 (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738). Therefore, qualified immunity extends to "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act" he punishes or prohibits. *Wolfel v. Morris*, 972 F.2d 712, 719–20 (6th Cir.1992); *Cf. Cross*, 965 F.2d at 632 (official's conduct is protected if reasonable in light of the law and information official possessed at the time).

### 2. The test for qualified immunity on summary judgment

■ Although the court identified above the usual analysis of a proffered defense of qualified immunity to liability for a constitutional violation, the court must determine the proper test for qualified immunity in the posture of these proceedings, cross-motions for summary judgment on this issue. The

test for qualified immunity at the summary judgment stage of a proceeding is an objective one: The plaintiff must demonstrate that the law is clearly established and the defendant then bears the burden of showing that his conduct either does not violate plaintiff's rights or that there were extraordinary circumstances and that the defendant neither knew nor should have known of the relevant legal standard. *Johnson–El*, 878 F.2d at 1048. If the plaintiff can show that the defendant's conduct violated clearly established law, "then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross*, 965 F.2d at 632 (quoting *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991)); *Johnson–El*, 878 F.2d at 1048 ("The defendant bears the burden of proof with respect to all other elements of the defense. . . .").

In the present case, DePugh has demonstrated that the law is clearly established that a warrantless search, except in certain narrow circumstances, violates constitutional rights secured by the Fourth Amendment. However, the defendants have failed to demonstrate that their reliance on one of these exceptions, consent, was reasonable in the circumstances alleged here. In fact, the court has determined that there is a genuine issue of material fact concerning the validity of consent in this case based, at least in part, on a genuine dispute concerning the reasonableness of defendants' conclusion that valid consent had been obtained. In these circumstances, the defendants are not entitled to summary judgment on the grounds of qualified immunity. Only if they can show the trier of fact that they had a valid consent to the search, or that they reasonably believed that they had obtained such consent, would defendants have a valid qualified immunity defense in this case. Defendants have not yet made such an undisputed showing. Defendants are therefore not entitled to summary judgment on the ground that they have qualified immunity to the claims presented here. By the same token, DePugh is not entitled to summary judgment on the

ground that defendants *do not* have qualified immunity.

### D. Declaratory Judgment

DePugh's complaint and motion for summary judgment also request equitable relief in the form of declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. However, because there is a genuine issue of material fact precluding summary judgment on each of the claims discussed above, there is also a genuine issue of material fact precluding summary judgment on any demand for declaratory relief as to the alleged violation of DePugh's constitutional rights as stated in those claims. No party is entitled to summary judgment on DePugh's claims for declaratory relief.

### V. CONCLUSION

The court concludes first that DePugh has moved the court to alter or amend its previous ruling on the parties' motions for summary judgment in which the court dismissed DePugh's complaint for failure to file within the applicable statute of limitations. The court finds that it did not afford sufficient consideration to DePugh's allegations and arguments to the effect that his complaint was timely filed within two years of the *accrual* of his claims. The court therefore alters or amends its prior disposition of the parties' motions for summary judgment as described below.

The court concludes that no party is entitled to summary judgment on the majority of claims presented in DePugh's complaint. First, the court concludes that there is a genuine issue of material fact as to when DePugh's claims presented here accrued and, thus, whether his complaint was timely filed. Neither party has presented undisputed evidence as to when DePugh knew or reasonably should have known of the warrantless searches and seizures DePugh alleges violated his constitutional rights. Second, the court concludes that DePugh has stated claims upon which relief can be granted. Specifically, the court has determined that there is a genuine issue of material fact as to whether defendants received valid consent to

the warrantless searches of DePugh's residence and place of business, and whether they reasonably believed they had obtained such consent. Thus, DePugh's claims of unreasonable search and seizure in violation of the Fourth Amendment survive defendants' motion for summary judgment. Similarly, the court concludes that there are genuine issues of material fact arising from the warrantless search and seizure that also generate genuine issues of fact concerning the alleged violation of DePugh's due process rights under the Fourteenth Amendment. However, the court finds that DePugh has failed to state an equal protection claim under the Fourteenth Amendment upon which relief can be granted, because he has failed to identify similarly situated persons who were treated more favorably than he was by these defendants. This is the only claim upon which defendants are entitled to summary judgment.

Because the court has concluded that there are genuine issues of material fact regarding the consensual nature of the warrantless search of DePugh's residence, the defendants have failed to demonstrate that their reliance on the consent exception for a warrantless search and seizure was reasonable in the circumstances alleged here. Thus, neither party is entitled to summary judgment on the question of the defendants' qualified immunity. Finally, because the court cannot enter summary judgment as a matter of law in DePugh's favor on any of his claims, the court also cannot enter declaratory judgment that DePugh's rights have been violated in the manner he alleges.

DePugh's motion to alter or amend judgment is granted, and, upon amendment, DePugh's motion for summary judgment is denied in its entirety, and defendants' motion for summary judgment is denied in part and granted in part as described above.

**IT IS SO ORDERED.**