**Eddie POST, Appellant,**

v.

**W.R. HARPER, also known as Bud Harper, Individually and in his official capacity as County Judge; Sebastian County, Arkansas, Appellees.**

No. 92–1561.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1992.

Decided Nov. 19, 1992.

Rehearing Denied Jan. 8, 1993.

Charles Karr, Fort Smith, Ark., argued, for appellant.

Michael R. Rainwater, Little Rock, Ark., argued, for appellees.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

BOWMAN, Circuit Judge.

Eddie Post brought this civil rights action pursuant to 42 U.S.C. § 1983 (1988) alleging that defendants, Judge W.R. "Bud" Harper and Sebastian County, Arkansas, violated his due process rights, equal protection rights, and first amendment rights. The District Court[1] granted defendants' motion for summary judgment, and Post appeals. We affirm.

Post was the golf professional and pro shop manager of the Ben Geren Park golf course in Sebastian County, Arkansas for over 18 years. County Judge W.R. "Bud" Harper is the chief executive officer of Sebastian County. The county conducted an investigation into alleged gambling activities at the Park. During the investigation, Post and his attorney met with Judge Harper and his administrative assistant David Hudson. The meeting was recorded and later transcribed.

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

A few days after this meeting, Judge Harper terminated Post's employment. Three grounds were listed in the notice of termination:

(1) Assisting bookmakers in record keeping for illegal gambling activity at Ben Geren Pro Shop. Posting records to a book and working with known bookies involved in illegal gambling activities at Ben Geren Pro Shop.

(2) Failure to report gambling activities. Condoning the continuance of these activities and assisting in gambling activities at the Pro Shop at Ben Geren Park.

(3) Violation of Code of Ethics by receiving supplies, equipment and merchandise for his own use or benefit.

Joint Appendix at 163. Three other Ben Geren Park employees, Floyd Metts, Charlie Vervack, and Alice Baker were terminated or resigned in the wake of the investigation into the gambling activities.

Post filed a written grievance and requested a hearing before the County Grievance Committee. On January 18, 1991, the Grievance Committee held a hearing. Post was represented by counsel and was able to present evidence, examine and cross-examine witnesses, and testify himself. (Post's testimony alone is over 80 pages long.) The Committee denied Post's grievance.

Post, Baker, and Vervack were charged with Horseracing–Agency service wagering, a Class D felony under Ark.Code Ann. § 5–66–117 (1987), by information filed by the Sebastian County Prosecuting Attorney's office. Baker, Vervack, and Metts were charged with other crimes stemming from the gambling activities and all three entered pleas and received reduced sentences. Post refused to enter a plea, and on March 14, 1991, he was acquitted by a jury.

After Post was acquitted, he wrote to Judge Harper seeking reinstatement and back pay. Judge Harper refused. Post then filed this action in the District Court, and the court granted summary judgment for the defendants.

We review a grant of summary judgment de novo. *United States ex rel. Glass v.*
*Medtronic, Inc.,* 957 F.2d 605, 607 (8th Cir.1992). The trial court, and this Court on appeal, apply the same standard: whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Post argues that neither the pre-termination hearing nor the post-termination hearing afforded him procedural due process. There is no dispute that Post was entitled to a due process hearing. The fourteenth amendment guarantees Post that he will not be deprived of liberty or property without due process of law. Post had a property interest in his job because he was a tenured public employee. He also had a liberty interest at risk because he was terminated for alleged gambling activities; thus his "good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). We therefore must determine whether the pre-termination and the post-termination hearings afforded Post adequate due process protection.

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Due process does require, however, that certain procedures be met; a plaintiff must receive adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). A court's function is limited when deciding whether a plaintiff received adequate due process protection. "In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487,

1493, 84 L.Ed.2d 494 (1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). We review the process afforded to the plaintiff; we do not review the merits of the decision rendered.

■ The pretermination hearing serves as an "initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495. Post contends that his due process rights were violated because he did not receive notice that his meeting with Judge Harper was a pretermination hearing. We are not persuaded by this argument. *Loudermill* does not require the government specifically to tell the employee that the hearing is a "pretermination hearing." Rather, in *Loudermill*, the Court stated that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546, 105 S.Ct. at 1495.

Judge Harper started out the meeting by saying the following:

> The main thing we wanted to do is to meet with you and ask you some questions about the charges that were filed at the Park.... [T]his is just our first conversation and we are not going to make any decisions one way or another today and I realize where you are in the situation here too.

Joint Appendix at 150. Judge Harper asked Post questions about the gambling activities at the Park and about Post's involvement in those activities. Judge Harper also asked Post about the merchandise he received for being "on staff" with a golf equipment company. Judge Harper made it clear that he was aware of the gambling activities at the park and was aware that Post was somehow connected with those activities. Post could not have failed to know that his job was in jeopardy because of his involvement with the gambling at the Park.

Post had ample opportunity to state his side of the story. He explained the extent of his knowledge of and involvement in the gambling scandal, and he also explained why he had received the merchandise from the golf company. At the end of the meeting, Judge Harper asked Post if there were any further comments he would like to make, and Post replied: "Not particularly. I can't think of anything now. The questions you asked me about the merchandise is the stuff I wanted to clear up today with you anyway so that was basically about it." Joint Appendix at 161. The meeting covered all three of the grounds listed in the notice of termination and was adequate to satisfy due process requirements.

■ In addition, Post requested and received an extensive post-termination hearing that was the equivalent of a full adversarial evidentiary hearing. He was represented by counsel, introduced evidence, and cross-examined witnesses. Post argues, however, that the way the Grievance Committee was impaneled to review his case violated his due process rights. The Sebastian County Employment Policies & Procedures Manual dictates that members of the committee pool shall be designated by the County Judge and approved by the Quorum Court. The committee pool is a standing committee consisting of no less than five members. When a grievance arises, the County Judge assigns three members from the committee pool to form the Grievance Committee and hear that grievance. Joint Appendix at 139–40. Post claims that this procedure allowed Judge Harper to "stack the deck" and therefore violated his due process rights. We disagree. Post specifically objected to one of the committee members assigned to hear his grievance, and Judge Harper replaced that member even though the hearing had to be postponed because of the change. We conclude that the manual contains adequate procedural safeguards and that Judge Harper did not violate Post's due process rights by adhering to the procedures required by the manual.

■ Post also argues that his due process rights were violated because the

Grievance Committee held its hearing before Post's criminal trial had taken place. Post offers no authority for this argument, and it is not persuasive. Due process affords Post a post-termination hearing at a "meaningful time." *Armstrong*, 380 U.S. at 552, 85 S.Ct. at 1191. Here, the Grievance Committee hearing was not any less at a meaningful time because it occurred prior to the resolution of the criminal charges that had been lodged against Post. We note that the jury's failure to find that Post was guilty beyond a reasonable doubt of the charged crimes would in no way control the decision of the Grievance Committee on the question of whether he had given the county proper cause for firing him.

In further attacking the post-termination hearing, Post contends that for a variety of other reasons he did not receive a fair hearing by the Grievance Committee and therefore his due process rights were violated. All of these arguments were carefully considered by the District Court. Having likewise carefully considered them, we conclude, as did the District Court, that they lack merit. The hearing gave Post an adequate opportunity to persuade the committee that he had not engaged in improper on-the-job conduct, and the committee had before it evidence adverse to Post on which to base its decision. Although Post claims the committee prejudged his case and acted as a rubber stamp for Judge Harper's decision, we find nothing in the record that would support such a claim. To the extent that Post's arguments attack the merits of the committee's decision, we decline to review them. As indicated earlier in this opinion, our function is not to second-guess the merits of the county's decision to discharge Post; our role is limited to determining whether he received the process he was due under the Constitution. A due process violation does not occur simply because the aggrieved employee is not satisfied with the outcome of the grievance hearing.

Next, Post claims that his equal protection rights were violated for the following reasons: (1) there is a County Code of Ethics for public employees but not for public officials; and (2) there is no judicial review from the County Grievance Committee decision, but municipal employees do receive judicial review. His arguments are not well-founded. First, as a factual matter Arkansas has provided a statutory Code of Ethics applicable to both public officials and public employees. *See* Ark.Code Ann. § 14–14–1202 (Michie Supp.1991) (entitled, "Ethics for county government officers and employees," and specifically applicable to, "[a]ll elected county and township officers." *Id.* § 14–14–1202(b)(1)(A)). And in any event, the Grievance Committee based its decision on Post's failure to report gambling activities and on his condoning such activities, not on his acceptance of merchandise in violation of the state or county Code of Ethics.[2] Second, both of Post's arguments miss the essence of equal protection analysis—similarly situated people must receive similar treatment under the law. *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). As a county employee, Post is not similarly situated, either in fact or in contemplation of law, to elected public officials or to municipal employees. Moreover, because the distinctions between county employees and county officials and between county employees and municipal employees are not suspect classifications, any different treatment is justified if it is rationally related to a legitimate governmental interest. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). Post argues that the differences in the legal protections afforded to county employees, as distinguished from those afforded to county officials or municipal employees, are not rationally related to legitimate governmental interests. His arguments are unpersuasive and do not warrant extended discussion.

---

**2.** The Grievance Committee did find that Post had violated the Code of Ethics. The committee stated, however, that the ethical violation "in and of itself would not have constituted grounds for dismissal." Joint Appendix at 373.

Finally, Post contends that his first amendment rights were violated because, after discharging Post from his job at the golf course, Judge Harper sent a letter to Post's counsel expressing Harper's concern about the ethical propriety of Post's attending a public meeting of the Park Commission. We reject this contention. Judge Harper's letter threatened no action of any kind and we find nothing in it that could infringe upon Post's first amendment rights. As the District Court remarked, "the court simply does not see how Harper's letter to [Post's] counsel effectively deprived [Post] of anything, much less his First Amendment rights." *Post v. Harper,* No. 91–2181, letter op. at 4 (W.D.Ark. Feb. 6, 1992).

The order of the District Court granting defendants' motion for summary judgment is affirmed.