Barbara Ruth DEMMING, Appellant,

v.

HOUSING AND REDEVELOPMENT AUTHORITY, OF DULUTH, MINNESOTA; Donald Zeh, individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN; Helen Horral, individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN; Violet Griffith, individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN; Nora Hakala, individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN, Appellees.

No. 94–3674.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1995.

Decided Sept. 29, 1995.

Richard A. Williams, Jr., argued, Minneapolis, Minnesota, for appellant.

Robert H. Magie, argued, Duluth, Minnesota (Bryan N. Anderson, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Barbara Ruth Demming appeals from an order of the district court[1] entering summary judgment in favor of the Housing and Redevelopment Authority of Duluth, Minnesota and its commissioners[2] on her claims arising out of her termination as the Housing Authority's Executive Director. In her claim, Demming sought relief for a violation of her equal protection and due process rights under 42 U.S.C. § 1983, relief under 42 U.S.C. § 1985 on the basis of discrimination because of her medical condition or failure to make reasonable accommodation of her disability, and relief based on numerous counts arising under Minnesota law, over which the court declined to exercise jurisdiction. On appeal, she argues that the district court erred in determining that she had received due process and that there was no evidence of discrimination. We affirm the judgment of the district court.

The Housing Authority hired Demming as Executive Director of the Housing and Redevelopment Authority of Duluth on July 1, 1990, for a two-year term. The contract provided that she could be terminated only for cause. She received a favorable evaluation and a salary increase in February 1991, but in April 1991, troubles began after the board chair received an anonymous letter attacking Demming. The board received a second anonymous letter in November 1991. The board held a special meeting on January 7, 1992, in which employees completed evaluation forms of Demming. Shortly thereafter, at a regularly scheduled meeting, the board again discussed whether Demming should be fired. On February 14, the board held another meeting, "closed" pursuant to Minnesota statute, to determine the procedures to be followed in evaluating Demming's perfor-

mance. On February 24, the board met with Demming and discussed an evaluation form they had completed rating her performance in forty-nine areas. Demming was not given a copy of the evaluation until she arrived at the meeting. When asked if she wanted to respond, she said, "No." The board continued to discuss the evaluation and after discussion of six of the forty-nine questions on the evaluation form, Demming stated that she did not "want to go through the rest." Shortly before that she had stated that "if this is just plain not working[,] and I will say it probably isn't[,] than [sic] I will just let [ ] me find a new job and I will be gone." The board asked her if she would like to resign, and she said, "I am saying I will immediately begin a job search." Thereafter, the board determined that she was a serious threat to the welfare of the Housing Authority and terminated her immediately. She then brought this action.

The district court held that Demming had a property interest in her job, but held that under *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), she received adequate pretermination due process. Because she "chose not to pursue the grievance procedure provided under Minnesota law, she did not elect the stricter requirements that apply to post-termination hearings." The court ruled that because Demming had notice and an opportunity to respond as required by *Loudermill,* the Housing Authority and board were entitled to summary judgment. With respect to her claims under the Rehabilitation Act, 29 U.S.C. § 794, the court held that Demming failed to raise a genuine issue of material fact as to whether she was an individual with a disability, failed to offer evidence to show that her medical condition prevented her from performing any of her major life activities, and failed to show she was adversely treated solely because of her disability. With respect to her claim under 42 U.S.C. § 1985, nothing in the record supported her claim of discrimination or failure to make

---

1. The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

2. Donald Zeh, Violet Griffith and Nora Hakala.

accommodation. The district court also dismissed her equal protection claim, and declined to exercise jurisdiction over her state-law claims.

## I.

We review the granting of summary judgment de novo. *Post v. Harper,* 980 F.2d 491, 493 (8th Cir.1992). We apply the same standard as the district court and affirm when the record viewed in the light most favorable to the non-moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Post,* 980 F.2d at 493.

Demming argues first that she failed to receive the required procedural due process during the course of her dismissal.[3] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). It is uncontested that Demming had a property interest in her position as the Executive Director of the Housing Authority. Therefore, we must decide whether the district court correctly concluded that Demming received adequate procedural due process.

Before a public employee may be terminated, a pretermination hearing must be provided. *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492–93. "The need for some form of pretermination hearing ... is evident from a balancing of the competing interests at stake. These are the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of erroneous termination." *Id.* at 542–43, 105 S.Ct. at 1493 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903). "The essential requirements of due process ... are notice and an opportunity to respond" before being discharged. *Id.,* 470 U.S. at 546, 105 S.Ct. at 1495.

There is no requirement that the pretermination hearing be a formal adversarial hearing. *Riggins v. Board of Regents,* 790 F.2d 707, 710 (8th Cir.1986). The pretermination hearing provides an initial check against mistaken terminations. *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. It ensures "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 546, 105 S.Ct. at 1495.

The crux of Demming's due process argument is that she did not have an opportunity to respond to the charges brought against her. However, as the district court properly concluded, Demming received both notice and an opportunity to respond.

Demming learned of the first anonymous letter when it was shown to her shortly after the board received it. She testified in deposition that she knew about the second anonymous letter even before it was read at the December 17, 1991 board meeting. She knew about the creation of an evaluation form that the board distributed to Housing Authority employees at the meeting on January 7, 1992. Demming voluntarily left the room after the employees asked that she not be present during the discussion regarding her job performance. While Demming argues that the February 24, 1992 evaluation meeting amounted to nothing more than an ambush, she received actual notice of the hearing and she knew the board was in the process of reviewing her performance.

Demming contends that she was denied an opportunity to respond to the charges against her at the February 24 meeting. However, the board attempted to conduct an in-depth performance evaluation, and Demming refused to participate. When asked, "Do you want to respond to any of this Barb, this is your chance, this is a chance," Demming replied, "No." Later in the meeting the following exchange occurred:

> Demming: I don't see—essentially if this is not working that I promise you that if you don't want to do those things if this

---

3. Because we hold that Demming received adequate pretermination due process, we do not need to reach the question of whether the Housing Authority or the board is immune from suit.

is just plain not working[,] and I will say it probably isn't[,] than [sic] I will just let me [ ] find a new job and I will be gone.

. . . .

Board: You would like to resign is that what your [sic] saying.

Demming: I am saying that I will immediately begin a job search.

Following this exchange, the board reviewed six of the forty-nine evaluation questions with Demming. At that point Demming stated, "I don't want to go through the rest."

Demming received an opportunity to respond during the February 24 meeting, and she chose not to do so. We need not decide whether she resigned or was terminated, as the quoted exchange demonstrates that she failed to take advantage of the due process opportunities the board provided her.

Demming received notice of the evaluation hearing, a copy of the evaluation form, and the opportunity to respond to the charges against her before being terminated. That is all due process required. *See Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495; *Riggins,* 790 F.2d at 710. We hold that Demming received adequate pretermination procedural due process of law.

Finally, the district court stated that because Demming "chose not to pursue the grievance procedure provided for under Minnesota law, she did not elect the stricter requirements that apply to post-termination hearings." The Housing Authority and board argue that Demming was entitled to independent post-termination review, and the accompanying procedural protection, provided by Minn.Stat. § 179A.25 (1992). In reply, Demming argues that section 179A.25 is inapplicable to her case. She also contends that federal law provides a right to judicial review, and nothing required her to take advantage of a post-termination hearing provided by Minnesota law. Because we hold

that Demming received adequate pretermination due process, and because she failed to pursue any available post-termination hearings, we need not decide if section 179A.25 applies in this case.

## II.

Demming argues that she is a disabled person discriminated against by the Housing Authority and the board in violation of the Rehabilitation Act, 29 U.S.C. § 794 (1988).[4]

> The [Rehabilitation] Act prohibits discrimination against otherwise qualified individuals with handicaps in programs that receive federal financial assistance. The Act is intended to ensure that handicapped individuals receive the same treatment as those without handicaps. To qualify for relief under this statute, a plaintiff must prove that (1) he was an "individual with handicaps"; (2) he was "otherwise qualified"; (3) he worked for a "program or activity" that received federal financial assistance; and (4) he was adversely treated solely because of his handicap.

*Chandler v. City of Dallas,* 2 F.3d 1385, 1389–90 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (footnotes omitted).

An individual with a disability is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B) (1988 & Supp. II 1990). In determining whether Demming is disabled under this definition, we look to the regulations promulgated in conjunction with the Act. *School Bd. v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987). These regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing,

4. Amendments to the statute occurring after the February 24, 1992 meeting between the board and Demming do not affect our decision. The 1992 amendments substituted the term disability for handicap and added subsection (d) to the statute.

speaking, breathing, learning, and working." 45 C.F.R. § 84.3 (1991).

Demming argues that her thyroid cancer limits her major life activities. She contends that being hospitalized is sufficient to establish impairment under the doctrine of *Arline,* 480 U.S. at 281, 107 S.Ct. at 1127–28. In *Arline,* the Court stated that Arline's tuberculosis was an impairment significant enough to require hospitalization, "a fact more than sufficient to establish that one or more of her major life activities were seriously limited." *Id.* Thus, Arline's hospitalization was evidence establishing a record of impairment under the statute. *Id.* However, later circuit court decisions have stated that simply being hospitalized is insufficient to establish an impairment under the Act. *See Byrne v. Board of Educ.,* 979 F.2d 560, 566 (7th Cir. 1992); *Taylor v. United States Postal Service,* 946 F.2d 1214, 1217 (6th Cir.1991).

■ As the district court concluded, Demming has failed to demonstrate that her thyroid cancer limited her major life activities. Her 1990 hospitalization fails to establish a disability under the statute. Demming testified in deposition that cancer did not prevent her from performing her duties on a daily basis. She further testified that she did not claim the Housing Authority failed to accommodate her condition by failing to provide proper working conditions. Demming has failed to produce evidence creating a genuine issue of material fact regarding her ability to work or perform the other tasks set out in 45 C.F.R. § 84.3. Thus, Demming's condition does not fall within the statutory definition of disability under the Rehabilitation Act.

■ Even if we considered Demming to be disabled under the meaning of the statute, she has failed to show that the Housing Authority or board discriminated against her based solely on her disability. *See Chandler,* 2 F.3d at 1390. Demming contends that a genuine issue of material fact exists as to whether members of the board discriminated against her because of her alleged disability.

In her deposition testimony, she states that the failure to attend a Christmas party because of her thyroid condition was one of the reasons she was fired. In addition, Demming argues that a board member wanted to place Demming on leave because of her cancer.

Viewing these allegations in the light most favorable to Demming, she has failed to produce evidence sufficient to create a cognizable Rehabilitation Act claim. Demming admits that the employment relationship was not working out, and the record is replete with performance related evidence unrelated to her alleged disability. As the district court indicated, numerous performance-related factors existed, leading the board to conclude that "severe, irreparable problems existed with respect to [Demming's] relationship with the Board and with a significant segment of the [Housing Authority's] employees."

Summary judgment is appropriate because Demming failed to produce evidence in response to the motion for summary judgment showing that the board voted to terminate her solely because of her medical condition. *See Landefeld v. Marion Gen. Hosp.,* 994 F.2d 1178, 1181 (6th Cir.1993). Demming has failed to satisfy the fourth element of her Rehabilitation Act claim. Thus, the district court did not err in granting summary judgment and dismissing Demming's Rehabilitation Act claim.

We affirm the judgment of the district court.